IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHAN TRAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-1080-N |
| | § | |
| SEWELL CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants Sewell Corporation ("Sewell"), Anthony Contreras, and Brent Vest's motion for summary judgment [23]. Because Plaintiff Phan Tran has not raised a genuine dispute of material fact about the reasons for his termination, the Court grants summary judgment and dismisses all claims.

**I. ORIGINS OF THE MOTION**

This dispute arises from Tran's employment with and termination from Sewell. Tran is a Vietnamese man who identifies as homosexual. Pl.'s Am. Compl. ¶ 7 [5]. He was employed by Sewell for nearly a decade. *Id.* He was terminated after sending a sexually explicit text to a college-age intern. *Id.* ¶ 7(i). Following his termination, he filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission, asserting claims of discrimination of race, national origin, and sexual orientation, and retaliation for protected conduct. Defs.' Mot. Br. 15 [24].

MEMORANDUM OPINION & ORDER – PAGE 1

Specifically, he points to four instances where his superiors, Vest and Contreras, made comments that he took to be discriminatory toward him because of his race, national origin, and sexual orientation:

First, Vest called him "Pop-Can Tran," a nickname Defendants claim was based upon a time he ran over a soda can in a loaner car. *Id.* at 33–34. Tran explained in his deposition that while he wasn't aware of the origin of the nickname, he believed it meant "something degrading, racially" because it was "improper" and "insulting to the Vietnamese name." Tran Dep., Pl.'s App. 30 [38]. Vest sometimes called the nickname out in a tone like a "hyena preying upon people." *Id.*

Second, in a discussion about favorite vacation spots, when Tran said that he enjoyed visiting Vietnam, Vest made a comment that another employee had been to Vietnam in the Vietnam War, insinuating that he enjoyed "killing the Vietnamese." *Id.* at 8.

Third, when Tran and a group of younger coworkers drove to the mountains to deliver a vehicle, Contreras said to Tran that he "was like a Boy Scout leader taking a group of young men into the wilderness." Pl.'s Resp. Br. 7 [37]. Tran viewed this statement as a homophobic innuendo that Contreras was implying Tran was exploiting younger men. *Id.*

Fourth, Vest said to Tran that "people like you are a different breed," *Id.* at 10, and told him he was a "one-man band." Tran Dep., Pl.'s App. 30. Tran was not sure if the statements referenced his homosexuality or his national origin, but he believed that each

"statement was made in a negative manner," and likely was in reference to one of his protected statuses. Pl.'s Resp. Br. 10; *see also* Tran Dep., Pl.'s App. 30.

Tran reported the Boy Scout comment through Sewell HR's EthicsPoint software. Pl.'s Resp. Br. 8. He spoke up against the Vietnam War reference in the moment, saying "there's no need to be racist and ignorant." Tran Dep., Pl.'s App. 8.

In June of 2022, Tran sent a text to an intern referencing genitalia and a sexual act. Defs.' Mot. Br. 9. A sales associate reported the message to Vest. *Id.* Vest and another manager met with Tran the day the text was reported. *Id.* Following the conversation with Tran, Vest reported the text message and the details of the meeting to his supervisor, the general sales manager. *Id.* at 10. The general sales manager reported the incident to the human resources manager, and together they conducted an investigation into the text message. *Id.* The general sales manager and human resources manager met following the investigation and reviewed Tran's personnel file, which contained two previous disciplinary warnings for making other Sewell employees uncomfortable, making this the third instance of behavioral misconduct. *Id.* at 10–11. They determined Tran should be terminated based on the severity of the misconduct in sending the text and his disciplinary record. *Id.* at 11.

Tran filed this lawsuit against Sewell, alleging that Sewell used the text as a pretext and instead fired him for discriminatory and retaliatory reasons.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence

of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT

Tran alleges that Sewell unlawfully terminated him based on his race, national origin, and sexuality in violation of the Texas Labor Code ("TLC") and 42 U.S.C. § 1981. Because one purpose of chapter 21 of the Texas Labor Code is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, courts analyze race discrimination claims under the two statutes using the same analytical framework. TEX. LAB. CODE § 21.001; *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021).

#### A. Legal Standard under the McDonnell Douglas Framework

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Tran bears the initial burden of establishing a prima facie case of discrimination and retaliation. Once accomplished, the burden to produce — but not persuade — shifts to Sewell, which must provide a nondiscriminatory, nonretaliatory explanation for its actions. The burden then shifts back to Tran to raise a fact issue regarding whether Sewell's stated reasons for dismissal are pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993) and *Texas Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

### *B. Tran Fails to Make a Prima Facie Case of Discrimination.*

First, Tran must establish a prima facie case of discrimination. A plaintiff must establish four elements for a prima facie case under the McDonnell Douglas framework, absent direct evidence of intentional race discrimination: "(1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged or suffered some other adverse employment action; and (4) he was replaced with a person outside of the protected class, or he was treated less favorably than similarly situated employees of a different race." Jones v. Overnite Transp. Co., 212 F. App'x 268, 272–73 (5th Cir. 2006) (citing McDonnell Douglas, 411 U.S. 792 and Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512–13 (5th Cir. 2001)).

Tran is a member of a protected class based on his race, national origin, and sexual orientation. For the purposes of this motion, the Court assumes he was qualified for his position. His termination satisfies the third element, as an adverse employment action. Therefore, the Court turns to the final element, whether he was replaced by someone outside of his protected class or was treated less favorably than similarly situated employees outside of his protected class.

Tran has not presented evidence to show he was replaced by someone outside of his protected class. The Court is not persuaded by his argument that because Sewell's recruiting practices "simply do not reflect any sincere interest in diversity," the absorption of his duties by other employees was necessarily by nonminorities because "it is undisputed that Plaintiff was in the minority at Sewell." *See* Pl.'s Resp. Br. 25.

Next, the Court looks to whether he was treated less favorably than similarly situated employees. Tran suggests two comparators: an employee named Coover and the class of "white sales associates."[1] The Court looks at each in turn.

Tran offers as a comparator a sales associate named Coover, who he claims sent a picture of his genitals to an intern and was not terminated. *Id.* at 28. Beyond the different circumstances surrounding this incident, this comparison fails because as Defendants argue, and Plaintiff does not rebut, there is no allegation that Sewell had any knowledge of the rumor. *See* Defs.' Mot. Br. 21–22; Pl.'s Resp. Br. 29.[2] Tran states in his deposition that he does not believe this incident was reported to HR or management. Tran Dep., Pl.'s App. 16. This incident cannot prove that Coover was treated more favorably by Sewell under substantially similar circumstances, because Sewell did not have the ability to address a situation of which it was unaware. There can be no substantially similar circumstance when the key element of knowledge is undisputedly missing.

Plaintiff does not offer evidence that any of the "white sales associates" class had similar disciplinary actions for which they were not terminated. He argues instead that this class had disparate pricing standards and disparate treatment. Pl.'s Resp. Br. 27.

---

[1] In their summary judgment motion, Defendants cite three comparators, including an unknown individual at a different dealership who was engaged in an adulterous relationship. Defs.' Mot. Br. 22–23. Plaintiff disposes of this comparator in his Response. Pl.'s Resp. Br. 29 n.15.

[2] Plaintiff takes issue with the characterization of this incident as a rumor, claiming that he has submitted summary judgment evidence of an "admission" of the recipient. Pl.'s Resp. Br. 28. However, the cited testimony of Tran characterizes it as a "telephone conversation" that he heard and did not follow up on for verification or report to Sewell. Tran Dep., Pl.'s App. 16. The Court therefore believes the characterization is apt.

MEMORANDUM OPINION & ORDER – PAGE 7

First, Plaintiff argues that he was subject to different pricing standards than white sales associates. Pl.'s Resp. Br. 27. In support of this, Tran points to a single instance where he was denied a proposed discount on a car for a Hispanic customer, and the same car was sold a month later at that discounted price. *Id.* at 9. Tran claims that the discount was denied because "they want[ed] to sell it for more," but believes that if another customer had asked for the same price, "they would have been willing to sell." Tran Dep., Pl.'s App. 29. It is unclear whether Plaintiff's argument is that the pricing standards were different because of Tran's race or the customer's. Either way, the argument fails because Tran fails to plead that the car was sold by someone outside of his protected class or to someone of a different ethnicity than the original customer.[3] The facts on the record, taken in the light most favorable to Tran, are insufficient to create a genuine dispute of material fact that the price difference was related to his protected characteristics, nor is there any other evidence in the record to support the assertion.

Second, Tran argues that the comments made to him during his employment show discriminatory treatment. The Court finds that none of the statements arise to more than stray remarks. Stray remarks, "standing alone, are insufficient to defeat summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).[4]

---

[3] In Tran's deposition, he states that he is unsure whether it was sold to another person or advertised online at the price stated, only that he knows the price ended up being the same as the discount that had not been approved a month prior. Tran. Dep., Pl.'s App. 28. There is no evidence on the record to suggest who sold the car or to whom the car was sold. The fact that Tran was "undisputed[ly] in the minority at Sewell," Pl.'s Resp. Br. 25, 27, does not itself create a fact issue.

[4] Plaintiff argues that the stray remarks doctrine "has been absolutely superseded" by *Reeves*, 530 U.S. 133. Pl.'s Resp. Br. 39. The Court rejects this argument because the

MEMORANDUM OPINION & ORDER – PAGE 8

Comments may function as "evidence of discrimination" only if under the four-prong test they are: "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Id.* (citing *Rubenstein v. Admin. of Tulane Edu. Fund*, 218 F.3d 392, 401 (5th Cir. 2000)).

As Tran concedes, the allegedly derogatory nickname and the hyena noises are "not easily tied to one of Plaintiff's protected characteristics." Pl.'s Resp. Br. 40 n.17. He is unable to specify how the "people like you are a different breed" comment related to a protected characteristic. *Id.* at 10.

This Court is unconvinced that the Boy Scout comment is related to Tran's protected class. Tran claims it relates to his sexuality, but the statement does not convincingly carry that connotation. It was not proximate in time to the adverse decision to fire him. The statement was made in 2020, and Tran was fired in 2022. Pl.'s Resp. Br. 7. Tran has not sufficiently shown that Contreras was involved in the employment decision. At most, Tran has asserted that Contreras was one of his supervisors and "as Plaintiff's supervisor[] . . . had potential influence or leverage on the two individuals who claimed to have decided upon the termination of Plaintiff." *Id.* at 46–47. Such a conclusory statement does not establish involvement. Finally, the statement is not related to the employment decision at

---

Fifth Circuit has "explained that this circuit's stray remarks doctrine survived the Supreme Court's decision in *Reeves*." *Jackson*, 602 F.3d at 380 n.27.

MEMORANDUM OPINION & ORDER – PAGE 9

issue. Because this statement does not meet any of the *Jackson* prongs above, it can be properly categorized as a stray remark.

The statement about the Vietnam War also does not sufficiently rise above a stray remark. Taken in the light most favorable to Tran, the statement is related to his protected class.[5] This conversation was in May of 2022, and he was fired at the end of June in 2022. Pl.'s Resp. Br. 10. Therefore, it was likewise proximate in time to the adverse decision. However, it was not made by someone with authority over the employment decision, as discussed below, nor was it related to the employment decision.

Because the Court finds that all the statements Tran has alleged as evidence of discrimination are "stray remarks," the statements do not provide a legally sufficient basis for a genuine dispute of material fact for the jury. *See Katseanes v. Time Warner Cable, Inc.*, 511 F. App'x 340, 346 (5th Cir. 2013) (applying this test and finding the same).

### C. Tran's Retaliation Claim Fails.

Tran raises a prima facie case of retaliation for his termination because he engaged in protected activity that was temporally proximate to his termination. However, Sewell meets its burden to produce an undisputed, nonretaliatory reason for his termination.

---

[5] There is some confusion in Tran's deposition of whether Vest merely implied that the other employee enjoyed killing Vietnamese people by bringing up his service record, or if he outright stated it. In his deposition, Tran claimed that Vest said, "I bet [the veteran coworker] enjoy going to Vietnam and killing the Vietnamese." Tran Dep., Pl.'s App. 8. However, when asked "did he really say he wanted to kill Vietnamese people?" Tran replied, "No." *Id.* When asked, "is that what he actually said or what you interpreted him to say?" he replied, "That's what—that's—if I recall—it's been—that's what I remember. Something to that extent." *Id.* For the purposes of this analysis, the Court analyzes the statement as though the implication was said aloud.

MEMORANDUM OPINION & ORDER – PAGE 10

Because Tran is unable to raise a fact issue to show that the stated reason is pretextual or that retaliation was a motivating factor in his termination, Tran's retaliation claim fails.

***1. Tran Makes a Prima Facie Case of Retaliation for His Termination.*** — To establish a prima facie case of retaliation, Tran must show that: "(1) [he] engaged in a protected activity; (2) [he was] subject to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action." *Hypolite v. City of Houston*, 493 F.App'x 597, 602 (5th Cir. 2012). "To constitute prohibited retaliation, an employment action must be 'materially adverse,' one that would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Tran argues that he engaged in protected activity twice: when he filed the EthicsPoint complaint against Contreras for the Boy Scout comment, and when he spoke up in a meeting against Vest's Vietnam War comment. He alleges he was subject to adverse employment action in three ways: his termination, his isolation, and his fear of reporting. The Court finds that only his termination constitutes an adverse employment action.

Tran claims that he felt isolated by Sewell after filing his complaint in 2020 because he expected someone to address the complaint with him, but when no one did, and he felt he was "being ignored," which made him think he "was going to get terminated." Tran Dep., Pl.'s App. 27. This made him feel isolated by the managers at Sewell, and he sensed that it was because "they were bother[ed] or upset by [his] comment." *Id.* He also

MEMORANDUM OPINION & ORDER – PAGE 11

repeatedly mentions a generalized fear "for [his] life" of reporting out of "fear of retaliation and spreading more hatred toward the Vietnamese community." *Id.* at 9–11, 45; *see also id.* at 34 (explaining that this fear was based on stories of Asian hate crimes during the COVID pandemic).

The evidence presented is insufficient to qualify as a materially adverse employment action. Tran argues that his "sense of isolation and fear of retaliation" meets the test under *Burlington* to establish reasonable discouragement from complaining of discrimination. Pl.'s Resp. Br. 42 n.19. However, *Burlington* states that it does not immunize an employee from "those petty slights or minor annoyances that often take place at work and that all employees experience" including "personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers." *Burlington*, 548 U.S. at 68. Tran's testimony of his isolation amounts to his own subjective belief that it was "harder . . . to talk to a manager" after his complaint because he was worried that the "silence" meant that the managers were "bother[ed] or upset" by his comment. Tran Dep., Pl.'s App. 27.

"The standard for judging material adversity is an objective one, which is applied from the perspective of a 'reasonable employee.'" *Architectural Granite & Marble, LLC v. Pental*, 2024 WL 3683713, at *13 (N.D. Tex. 2024) (quoting *Burlington*, 548 U.S. at 68–69). Courts have consistently found worse treatment than what Tran experienced to be insufficient to rise to the level of materially adverse. *See, e.g.*, *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (holding that poor treatment by the employee's manager and store manager was not materially adverse); *Stewart* 586 F.3d at 332 (holding that being chastised by superiors and ostracized by coworkers was not materially adverse).

MEMORANDUM OPINION & ORDER – PAGE 12

The Court finds that Tran's belief of isolation after his reported complaint was not a materially adverse employment action.

Likewise, Tran's fear of retaliation is insufficient to establish a materially adverse employment action because the evidence presented shows that it is based on his personal views of the world and concerns about hatred against the Vietnamese generally and not based on any act by Sewell or related to his employment in any objective manner.

Because only Tran's termination meets the first and second element, the Court looks to whether Tran has sufficiently pled a causal link between his protected action and his termination. Tran argues that temporal proximity alone establishes a causal connection. Pl.'s Resp. Br. 43. Because the Vietnam War statement was made in May 2022 and the termination was in June 2022, the Court finds that there was a temporal proximity between the protected action and the termination. The Fifth Circuit has found that at "the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). While the Defendants raise an issue of but-for causation because Tran fails to provide a genuine dispute of fact regarding whether the decisionmakers had any awareness of his protected conduct, the "but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework." *Id.*

Therefore, the Court finds that Tran has made a prima facie case for retaliation for his termination based on temporal proximity.

***2. Sewell Has Met Its Burden to Produce a Nondiscriminatory, Nonretaliatory Reason for Tran's Termination.*** — Sewell has produced a compelling, undisputed, nondiscriminatory, nonretaliatory reason for Tran's termination. It is undisputed that Tran sent the sexually explicit text to an intern. Tran Dep., Pl.'s App. 13. Such inappropriate behavior was contrary to Sewell's policies, as discussed further below. Therefore, Sewell has met its burden to produce a nondiscriminatory, nonretaliatory reason for Tran's termination.

***3. Tran Fails to Raise a Fact Issue that Sewell's Stated Reason is Pretextual.*** — In the Title VII context, the Fifth Circuit uses a "modified *McDonnell Douglas* approach," which recognizes a "mixed-motive" alternative to the pretext-based last step. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), *abrogated in part by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (precluding mixed-motive analysis in ADEA cases). This modified approach provides that if "a plaintiff demonstrates that [a Title VII protected characteristic] was a motivating factor in the employment decision, it then falls to the defendant to prove that 'the same adverse employment decision would have been made regardless of discriminatory animus.'" *Id.* (quoting *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1216–17 & n.11 (5th Cir. 1995)). Thus, a Title VII plaintiff may use two methods to establish the existence of a genuine issue of material fact after a defendant has provided a nondiscriminatory reason for the adverse employment action: "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendants' reason, while true, is only one of the reasons for its conduct and another 'motivating factor' is the plaintiff's protected characteristic (mixed-

MEMORANDUM OPINION & ORDER – PAGE 14

motive[s] alternative).'" *Id*. (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)). To the extent that Tran brings claims under 42 U.S.C. § 1981, this framework also applies. *Patterson v. McClean Credit Union*, 491 U.S. 164, 186 (1989).

Tran's claim fails because he has not presented evidence to create a reasonable basis to infer Sewell's proffered reason for his termination is pretextual or that his protected characteristics were a motivating factor in his termination. Tran attempts to show pretext by arguing: (1) Sewell's policies against harassment do not apply if he can show the conduct was not unwelcome to the recipient, and (2) because the inappropriate text was reported to Vest, who in turn reported it to his supervisor and Sewell HR, Vest's connection creates a "cat's paw" effect that necessarily influenced and tainted the decision.

On the first argument, the Court disagrees that Tran's evidence creates a dispute of fact as to Sewell's belief that Tran had violated its workplace policies. Tran does not dispute sending the text. Tran Dep., Pl.'s App. 13. Instead, he argues that the text was a joke and was received as one, and therefore Sewell could not legitimately fire him for such an indiscretion. Pl.'s Resp. Br. 30. He goes so far as to argue that because he frequently made the same sexually explicit joke in the workplace, he could not legitimately be fired for it because his other incidents of misconduct had not been reported. *Id.* Repeated harassment and violations of workplace policy, however, do not absolve future violations. And "unwelcomeness" is not a required element here. Sewell maintains a policy against such harassment, that "include[s] conduct that creates a disrespectful, intimidating, hostile, degrading, humiliating, or offensive environment." Defs.' Mot. Br. 29. The policy does

MEMORANDUM OPINION & ORDER – PAGE 15

not specify who is required to find the conduct disrespectful or offensive, nor does it require the behavior to be "unwelcome" to the recipient, as Tran contends. The Court is therefore unconvinced by Tran's arguments that Sewell did not have a legitimate reason to fire him under their policies because the text was received as a joke or was not unwelcome to the recipient.

The Court also disagrees with Tran's theory that Sewell violated its progressive discipline policy either by terminating him rather than issuing a warning or because his supervisor talked to him about the text first and HR made the decision to fire him days later. Tran argues that Sewell's disciplinary policy is progressive, requiring counseling and warnings prior to termination. Pl.'s Resp. Br. 14. But the very passage of Vest's deposition that Plaintiff cites as proof that the policy requires warnings and counseling says that Sewell has a policy that "termination can happen immediately" for some incidents. Vest Dep., Pl.'s App. 139. Even if that were not the case, Tran had previously received counseling and warnings for two prior incidents of misconduct that involved making other employees uncomfortable, making this his third strike under the progressive policy. Pl.'s Resp. Br. 14–15. Tran does not dispute the two disciplinary warnings on his record, but argues that they were minor, justifiable infractions from several years prior that were not sufficient to justify termination. *Id.* at 14–16. Plaintiff also argues that these incidents are hearsay unless the Defendants provide testimony from the subjects of Tran's prior behavior. *Id.* However, these prior disciplinary actions are used here to show the effect of the undisputed fact of their existence in his record on the decisionmakers' choice to terminate Tran, not for the truth of the matter asserted within nor as independent bases for

MEMORANDUM OPINION & ORDER – PAGE 16

termination. Therefore, Plaintiff's arguments that they are hearsay or do not themselves constitute a sufficient basis for termination are irrelevant.

The Court is also unpersuaded by the conclusory argument that Tran could not legitimately be counseled about inappropriate behavior by his supervisor and terminated for the same behavior by Sewell HR after an investigation. Pl.'s Resp. Br. 12. Plaintiff has failed to establish a genuine dispute of material fact that this was not an acceptable practice at Sewell.[6]

Because the Court finds that Sewell could reasonably terminate Tran in this manner under its standards of conduct and harassment policies for sending an unsolicited sexually explicit message to an intern, Tran has failed to present a fact issue that Sewell policy makes his termination pretextual.

Next, the Court considers Tran's "cat's paw" argument. Tran argues that Vest, in escalating the text to the general sales manager and the human resources manager, acted as a "cat's paw," because he initiated the process leading to Tran's termination. Pl.'s Resp. Br. 40, 44 (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 418–23 (2011)). Vest received the initial report of the inappropriate text, addressed it with Tran along with another manager, and then reported the details of his conversation and the text to the general sales

---

[6] Plaintiff claims that "[a]ccording to Romo, no other Sewell employees have been counseled and then terminated soon after for the same thing they were counseled about." Pl.'s Resp. Br. 12. This characterization appears to assert that Romo stated this was not in line with Sewell practice and policy, which does not accord with the testimony. Romo testified that "there are times that a termination doesn't happen immediately after it's brought to others' attention and they talk through it. I can't think of a specific occasion, but it's not always immediate." Romo Dep., Pl.'s App. 181.

MEMORANDUM OPINION & ORDER – PAGE 17

manager, who in turn reported the incident to the human resources manager. Defs.' Mot. Br. 9–10. The general sales manager and the human resources manager made the decision to terminate Tran based on the text and Tran's record. Pl.'s Resp. Br. 13.

The cat's paw theory is premised on the idea that "supervisors may cause an employee's discharge by leveraging other employees and submitting false reports" because the ultimate decisionmakers often make their decisions "on the basis of performance assessments by other supervisors." *Menard v. Targa Res., L.L.C.*, 2023 WL 4763326, at *3 (5th Cir. 2023) (citing *Staub*, 562 U.S. at 419). "To succeed under a cat's paw theory, 'a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action. Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action.'" *Leiva v. Admin. Rev. Bd.*, 811 F.App'x 237, 239 (5th Cir. 2020) (quoting *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)).

Tran posits that Vest acted as a cat's paw because (1) he "had potential influence or leverage on the two individuals who claimed to have decided upon the termination of Plaintiff" and (2) "he initiated the very process leading to Plaintiff's termination." Pl.'s Resp. Br. 44, 46. The first claim is easily dispensed with as a conclusory statement with no support. Plaintiff does not attempt to demonstrate why he believes Vest, merely by virtue of being Tran's supervisor, necessarily had "potential influence or leverage" over his own supervisor or a corporate executive who works at a different office, and there is no evidence on the record to suggest his involvement or influence.

Tran admits that he showed the text message to other coworkers. Tran Dep., Pl.'s App. 36. Vest was just one link in a chain of reporting an inappropriate text that Tran himself was sharing with his coworkers. *See* Defs.' Mot. Br. 9–10 (explaining that another sales associate reported the text to his supervisor, Vest, who in turn reported it to his supervisor, the general sales manager, who in turn reported the text to HR). There is no indication in the record that Vest's escalation of the text to his supervisor carried any weight in the termination decision, and Tran's own pleading reflects that the "decision was made to terminate Plaintiff based upon the text and the two prior occasions on which an employee was allegedly made uncomfortable by Plaintiff." Pl.'s Resp. Br. 13. Under the cat's paw theory, a "supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Staub*, 562 U.S. at 421. Here, however, there is no evidence that Vest made any biased report or recommendation, or that his opinion was taken into account in the decisionmaking process. Because Sewell's general sales manager and human resources manager conducted an independent investigation and determined that the termination was entirely justified without relying on any allegedly biased report or recommendation by Vest, there is no evidence supporting a cat's paw theory.

Because Tran fails to present a genuine dispute of material fact that the reasons for his termination were pretextual or a motivating factor in his termination, he cannot show pretext as a matter of law. Accordingly, the Court grants summary judgment to Defendants.

MEMORANDUM OPINION & ORDER – PAGE 19

## CONCLUSION

Because Defendants have shown that there is no genuine dispute of material fact as to whether Sewell's proffered reason for termination is pretextual, the Court grants summary judgment to Defendants and dismisses this case with prejudice.

Signed November 20, 2024.

_____
David C. Godbey
Chief United States District Judge